UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


FITCH MARINE TRANSPORT, LLC,           CIVIL ACTION
ET AL.

VERSUS           NO: 09-4450

AMERICAN COMMERCIAL LINES,           SECTION: "S" (2)
LLC, ET AL.

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion *in Limine* filed by plaintiffs, Fitch Marine Transport, LLC and Mohawk Freedom Marine, LLC (Doc. #27), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment filed by plaintiffs, Fitch Marine Transport, LLC and Mohawk Freedom Marine, LLC (Doc. #14), is **GRANTED**.

## BACKGROUND

This matter comes before the court on a motion for partial summary judgment and a motion *in limine* filed by plaintiffs Fitch Marine Transport, LLC ("Fitch Marine") and Mohawk Freedom Marine, LLC ("Mohawk Freedom"). Fitch Marine and Mohawk Freedom argue that there is no genuine issue of material fact that the charter agreements to which they were parties that are

involved in this litigation were improperly terminated. They also argue that the parol evidence rule precludes the admission of extrinsic evidence to explain the terms of the termination letter because the letter is clear and unambiguous.

Plaintiffs, Fitch Marine, Mohawk Freedom, and Kacomege L Transportation, LLC ("Kacomege")[1] (collectively "plaintiffs"), are related companies[2] that brought this suit alleging that defendants wrongfully terminated various charter agreements. Plaintiffs entered into four sets of charter agreements with defendant, American Commercial Lines, LLC ("ACL"). ACL owns the vessels involved in the charter agreements.[3] The charter agreements are as follows:

1. ACL bareboat chartered[4] the M/V JAMES E. PHILPOTT to Mohawk Freedom. Fitch Transportation, Inc. ("Fitch Transportation"), another related company, crewed the vessel. Then, Mohawk Freedom chartered the vessel back to ACL on a fully found basis.[5]

2. ACL bareboat chartered the M/V CHERYL DOBARD to Fitch Marine. Fitch Transportation crewed the vessel. Then Fitch Marine chartered the vessel back to ACL on a fully found basis.

---

[1] Kacomege did not join in the motion for partial summary judgment or the motion *in limine*.

[2] Larry Fitch was the 100% owner and operator of Fitch Marine and Mohawk Freedom. Also, Larry Fitch owned 50% of Kacomege and was its sole operator.

[3] The vessels, the M/V JAMES E. PHILPOTT, M/V CHERYL DOBARD, M/V EDDIE TOUCHETTE, M/V TANY McKINNEY, are named as *in rem* defendants.

[4] A "bareboat" or "demise" charter agreement is characterized by a "complete transfer of possession, command, and navigation of the vessel from owner to the charter." Gaspard v. Diamond M. Drilling Co., 593 F.2d 605, 606 (5th Cir. 1979). The vessel is chartered without equipment or a crew. See Winn v. C.I.R, 595 F.2d 1060, 1062 (5th Cir. 1979).

[5] In a "fully found" charter, the owner or bareboat charterer delivers the vessel fully crewed, supplied and equipped, and ready to perform a particular job for the fully found charterer. See Winn, 595 F.2d at 1062.

3. ACL bareboat chartered the M/V EDDIE TOUCHETTE to Fitch Marine. Fitch Transportation crewed the vessel. Then Fitch Marine chartered the vessel back to ACL on a fully found basis.

4. ACL bareboat chartered the M/V TANY McKINNEY to Kacomege. Fitch Transportation[6] crewed the vessel. Then Kacomege chartered the vessel back to ACL on a fully found basis.

The bareboat charters and the fully found charters have provisions for termination of the charter agreements based on "Events of Default," which are defined as failures to perform obligations and duties or make prompt payment, or violations of the prohibitions or breaches of the terms and conditions of the charter agreements. The non-defaulting party must give the defaulting party immediate written notice setting forth the "Events of Default" claim, and the defaulting party then has ten business days from the receipt of such notice to cure the "Events of Default." If the defaulting party does not cure the default, then the non-defaulting party may immediately terminate the charter agreement by written notice to the defaulting party.

Additionally, the fully found charter agreements provide that ACL, as the charter, may immediately terminate the charter agreement if Fitch Marine, Mohawk Freedom, or Kacomege fail to comply with certain minimum performance standards. To terminate the fully found charter agreements under this provision, ACL must provide written notice of such failure and termination

---

[6] At Larry Fitch's request, ACL made its charter payments for all four vessels in a lump sum to Fitch Transportation, instead of individually payments to Fitch Marine, Mohawk Freedom, and Kacomege. Also, Fitch Transportation, handled the payroll, maintenance, and personnel records for the crews of all four vessels, and obtained insurance for all four vessels.

to Fitch Marine, Mohwak Freedom, or Kacomege, depending on which company was a party to the particular charter agreement that is being terminated.

On October 13, 2008, the M/V TANYA McKINNEY ran aground, and Kacomege did not properly report the incident. As a result, ACL conducted a performance review of each of the four chartered vessels. The performance review revealed various violations of the minimum performance standards in relation to the M/V JAMES E. PHILPOTT, the M/V CHERYL DOBARD, and the M/V EDDIE TOUCHETTE.

On October 17, 2008, after the performance review, ACL notified Larry Fitch of the immediate termination of all of the bareboat and fully found charter agreements. The termination letter stated in pertinent part:

> Please accept this letter as confirmation of our conversation of the immediate termination of the Fully Found and associated Bareboat Charters of the M/V Tanya McKinney, O.N. 626240; M/V Eddie Touchette, O.N. 549972; M/V James E. Philpott, O.N. 568630; M/V Cheryl Dobard, O.N. 555976 ("Charters") . . . This termination is for failure to comply with applicable operational laws and regulations, specifically the failure to report a grounding, as a marine casualty incident on or about October 13, 2008. This termination is effective immediately and Charter Hire will Cease today, October 17, 2008.

Larry Fitch signed and returned the letter to ACL. On July 20, 2009, Fitch Marine, Mohawk Freedom, and Kacomege filed this suit alleging that ACL improperly terminated the fully found charter agreements.

**ANALYSIS**

**1.     Fitch Marine's and Mohawk Freedom's Motion *in Limine***

Fitch Marine and Mohawk Freedom filed a motion *in limine* seeking to exclude evidence of the incidents outlined in ACL's performance review of the charter agreements regarding the M/V JAMES E. PHILPOTT, M/V CHERYL DOBARD, and M/V EDDIE TOUCHETTE from consideration in connection with their motion for partial summary judgment. Fitch Marine and Mohawk Freedom argue that the termination letter is clear and unambiguous in stating that the termination of the charter agreements was based upon the October 13, 2008, incident involving the M/V TANYA McKINNEY, and that other evidence regarding the basis for the termination is inadmissible pursuant to the parol evidence rule.

The parol evidence rule is a "substantive rule of contract law and not a rule of evidence." Garza v. Marine Transport Lines, Inc., 861 F.2d 23, 26 (2nd Cir. 1988). The rule is generally stated as follows:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

3 A. CORBIN, CONTRACTS § 573 (2009).

The basic requirements of a contract are: offer, acceptance, and consideration. In re Tasch, Inc., 46 Fed. Appx. 731 (5th Cir. 2002) (citing John D. Calamari & Joseph M. Perillo, Contracts §§ 2.1, 4.1 (4th ed. 1998)). The termination letter does not embody the basic requirements of a contract. The termination letter is not an offer to terminate, but rather, it is ACL's statement that

the charter agreements were terminated. Consideration is present when the contracting parties gain some legally enforceable right as a result of the contract that they did not previously have. Johnson v. Seacor Marine Corp., 404 F.3d 871, 875 (5th Cir. 2005). Neither ACL nor any of the plaintiffs gained a legally enforceable right as a result of the termination letter that they did not previously have. To the contrary, ACL issued the termination letter as an exercise of rights that it believed it had under the contract.

Therefore, the termination letter is not a contract, and the parol evidence rule does not apply. Evidence regarding the incidents shown in the performance review regarding all of the vessels may be considered in analyzing the meaning of the termination letter concerned in to Fitch Marine's and Mohawk Freedom's motion for partial summary judgment.

**2.      Fitch Marine's and Mohawk Freedom's Motion for Partial Summary Judgment**

Fitch Marine and Mohawk Freedom filed a motion for partial summary judgment arguing that there is no genuine issue of material fact that the fully found charter agreements involving the M/V JAMES E. PHILPOTT, M/V CHERYL DOBARD, and M/V EDDIE TOUCHETTE were improperly terminated.[7] Fitch Marine and Mohawk Freedom argue that ACL's termination of those fully found charter agreements was improper because it was based upon an incident that involved only the M/V TANYA McKINNEY, not the vessels that were the subjects of ACL's charter agreements with Fitch Marine and Mohawk Freedom. Fitch Marine and Mohawk Freedom argue that ACL's termination of the fully found charter agreements did not comply with the minimum

---

[7] The motion does not apply to plaintiffs' claims regarding the termination of the fully found charter agreement involving the M/V TANYA McKINNEY.

performance standard termination clause of the fully found charter agreements because ACL identified the October 13, 2008, incident involving the M/V TANYA McKINNEY as the basis for the terminations, and did not provide written notice of any incident involving the other vessels that lead to the termination of the other charter agreements. Additionally, Fitch Marine and Mohawk Freedom contend that the minimum performance standard termination clause required ACL to terminate the charter agreements immediately after the discovery of any non-compliance.

Defendants argue that the terminations were proper under the minimum performance standard clause, because the terminations were based upon the incidents shown in the performance review.[8] Defendants contend that the minimum performance standard clause requires written notice of failure and termination, but does not require details regarding each failure. Defendants contend that the termination letter complied with the minimum performance standard clause because it provided notice of failure and termination.

### A. Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The

---

[8] Defendants do not argue that the termination of the charter agreements was proper under the "Events of Default" clause, which required a specific designation of the event of default, and 10 days for the charterer to cure the default.

non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

    **B.**    **Maritime Contract Interpretation**

It is well established that a charter agreement is a maritime contract. See Morewood v. Enequist, 64 U.S. 491 (1860); see also Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 572 (2nd Cir. 2005). Generally, courts apply federal common law to resolve maritime disputes. Albany Ins. Co. v. Anh Thi Kieu, 927 F.2d 882, 886 (5th Cir. 1991). When interpreting a maritime contract, the general rules of contract construction and interpretation apply. Marine Overseas Services, Inc. v. Crossocean Shipping Co., Inc., 791 F.2d 1227, 1234 (5th Cir. 1986); Ogea v. Loffland Bros. Co., 622 F.2d 186 (5th Cir. 1980). Each provision of a contract must be read in light of others so as to give each the meaning reflected by the contract as a whole. Southwestern Eng'g Co. v. Cajun Elec. Power Co-op., Inc., 915 F.2d 972 (5th Cir. 1990). Further, each provision of a contract must be given a meaning that renders it, along with all other provisions, effective rather than meaningless. See Lewis v. Hamilton, 652 So.2d 1327 (La. 1995).

### C. The Minimum Performance Standards Clause

The minimum performance standard termination clause found in the fully found charter agreements states that ACL, as the charter:

> may immediately terminate this Charter in the event that Owner (Fitch Marine, Mohawk, or Kacomege)[9] fails to comply with the Requirements of the Minimum Performance Standards 8, 9, 10, and 11 as outlined in Exhibit "B" herein[10] by furnishing written notice of such failure and termination to Owner (Fitch Marine, Mohawk Freedom, or Kacomege).

To exercise its rights under this termination provision, ACL must provide Fitch Marine, Mohawk Freedom, or Kacomge with written notice that there has been a failure to meet the minimum performance standards and written notice of termination of the charter agreement. The provision permits, but does not require, ACL to act immediately upon discovering a failure to meet

---

[9] Fitch Marine, Mohawk, and Kacomege are each described as the "owner" in the applicable fully found charter agreement because these entities effectively became the "owners" of the vessels pursuant to their bareboat charters of the vessels.

[10] The referenced "Requirements of Minimum Performance Standards" are:

8. Spills, which is defined as any release to the environment or deck of recordable quantity as defined by Charter. The minimum standard is that zero spills occur.

9. Marine Casualty, which is defined in 46 C.F.R. § 4.05-1. The minimum standard is that zero marine casualties occur.

10. Vessel Security Plan, which is defined in 33 C.F.R. § 104 for vessels towing any CDC or Subchapter D&O tank barges. The minimum standard is 100% compliance.

11. Incident Reporting, which requires notification of all incidents pursuant to 46 C.F.R. § 4.05-1 involving barges while in care and custody of the vessel, or contamination. The minimum standard is 100% compliance.

9

the minimum performance standards. Further, the provision does not require ACL to give Fitch Marine, Mohawk Freedom, or Kacomge ten days to cure the failure.

ACL's termination letter does not provide written notice of termination as required by the minimum performance standards clause of the charter agreements. The letter states that the "termination is for failure to comply with applicable operational laws and regulations, specifically the failure to report a grounding, as a marine casualty incident on or about October 13, 2008." This statement does not inform Fitch Marine or Mohawk Freedom that their charter agreements with ACL are being terminated for failure to comply with the minimum performance standards, because it does not state that Fitch Marine or Mohawk Freedom breached minimum performance standards. Further, the letter states the termination is "specifically" due to the October 13, 2008, incident involving the M/V TANYA McKINNEY. "Specifically" means "in regard to the matter in question" or "with exactness and precision." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). By stating that the terminations were "specifically" due to the October 13, 2008, incident involving the M/V TANYA McKINNEY, ACL indicated that there was no other reason for the terminations. Therefore, the letter indicates that ACL relied on the October 13, 2008, incident as the reason for the termination and did not rely on any other evidence adduced in the performance review of the other vessels. The termination letter did not comply with the minimum performance standards clause's requirement of written notice of termination of the charter agreements that ACL had with Fitch Marine and Mohawk Freedom.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion *in Limine* filed by plaintiffs, Fitch Marine Transport, LLC and Mohawk Freedom Marine, LLC (Doc. #27), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment filed by plaintiffs, Fitch Marine Transport, LLC and Mohawk Freedom Marine, LLC (Doc. #14), is **GRANTED**.

New Orleans, Louisiana, this  14th  day of June, 2010.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**