# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FITCH MARINE TRANSPORT, LLC, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-4450** |
| **AMERICAN COMMERCIAL LINES, LLC, ET AL.** | **SECTION: "S" (2)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment as to Certain Affirmative Defenses (Doc. #76), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #77), is **DENIED.**

## BACKGROUND

Plaintiffs, Fitch Marine Transport, LLC ("Fitch Marine"), Mohawk Freedom Marine, LLC ("Mohawk"), and Kacomege L Transportation, LLC ("Kacomege") (collectively "plaintiffs"), are related companies[1] that brought this suit alleging that defendants wrongfully terminated various charter agreements. Plaintiffs entered into four sets of charter agreements with defendant, American

---

[1] Larry Fitch was the 100% owner and operator of Fitch Marine and Mohawk. Also, Larry Fitch owned 50% of Kacomege and was its sole operator.

Commercial Lines, LLC ("ACL"). ACL owns the vessels involved in the charter agreements.[2] The charter agreements are as follows:

1. ACL bareboat chartered[3] the M/V JAMES E. PHILPOTT to Mohawk. Fitch Transportation, Inc. ("Fitch Transportation"), another related company, crewed the vessel. Then, Mohawk chartered the vessel back to ACL on a fully found basis.[4]

2. ACL bareboat chartered the M/V CHERYL DOBARD to Fitch Marine. Fitch Transportation crewed the vessel. Then Fitch Marine chartered the vessel back to ACL on a fully found basis.

3. ACL bareboat chartered the M/V EDDIE TOUCHETTE to Fitch Marine. Fitch Transportation crewed the vessel. Then Fitch Marine chartered the vessel back to ACL on a fully found basis.

4. ACL bareboat chartered the M/V TANY McKINNEY to Kacomege. Fitch Transportation[5] crewed the vessel. Then Kacomege chartered the vessel back to ACL on a fully found basis.

---

[2] The vessels, the M/V JAMES E. PHILPOTT, M/V CHERYL DOBARD, M/V EDDIE TOUCHETTE, M/V TANY McKINNEY, are named as *in rem* defendants.

[3] A "bareboat" or "demise" charter agreement is characterized by a "complete transfer of possession, command, and navigation of the vessel from owner to the charter." Gaspard v. Diamond M. Drilling Co., 593 F.2d 605, 606 (5th Cir. 1979). The vessel is chartered without equipment or a crew. See Winn v. C.I.R, 595 F.2d 1060, 1062 (5th Cir. 1979).

[4] In a "fully found" charter, the owner or bareboat charterer delivers the vessel fully crewed, supplied and equipped, and ready to perform a particular job for the fully found charterer. See Winn, 595 F.2d at 1062.

[5] At Larry Fitch's request, ACL made its charter payments for all four vessels in a lump sum to Fitch Transportation, instead of individually payments to Fitch Marine, Mohawk, and Kacomege. Also, Fitch Transportation, handled the payroll, maintenance, and personnel records for the crews of all four vessels, and obtained insurance for all four vessels.

Article 4(c)(iv) of the fully found charter agreements provided that ACL, as the charter, may immediately terminate the charter agreement if "Owner (Fitch Marine, Mohawk, or Kacomege)[6] fail[ed] to comply with the Requirements of the Minimum Performance Standards 8, 9, 10, and 11 as outlined in Exhibit "B" herein by furnishing written notice of such failure and termination to Owner (Fitch Marine, Mohawk, or Kacomege)."

On October 13, 2008, the M/V TANYA McKinney ran aground, and Kacomege did not properly report the incident. As a result, ACL conducted a performance review of each of the four chartered vessels. The performance review revealed various performance issues with each of the vessels that may implicate the minimum performance standards clause.

On October 17, 2009, after the performance review, ACL notified Larry Fitch of the immediate termination of all of the bareboat and fully found charter agreements. The termination letter stated in pertinent part:

> Please accept this letter as confirmation of our conversation of the immediate termination of the Fully Found and associated Bareboat Charters of the M/V Tanya McKinney, O.N. 626240; M/V Eddie Touchette, O.N. 549972; M/V James E. Philpott, O.N. 568630; M/V Cheryl Dobard, O.N. 555976 ("Charters") . . . This termination is for failure to comply with applicable operational laws and regulations, specifically the failure to report a grounding, as a marine casualty incident on or about October 13, 2008. This termination is effective immediately and Charter Hire will Cease today, October 17, 2008.

Larry Fitch signed an returned the letter to ACL indicating that he "agreed and accepted" its terms. Thereafter, he returned the vessels to ACL.

---

[6] Fitch Marine, Mohawk, and Kacomege are each described as the "owner" in the applicable fully found charter agreement because these entities effectively became the "owners" of the vessels pursuant to their bareboat charters of the vessels.

On June 19, 2009, ACL asked Larry Fitch to pay for repair costs incurred by ACL due to damages sustained by its vessels and barges while they were in the care, custody, and control of Larry Fitch's companies pursuant to the bareboat charter agreements. On July 20, 2009, Fitch Marine, Mohawk, and Kacomege filed this suit alleging that ACL improperly terminated the full found charter agreements based upon the October 13, 2008, incident involving the M/V TANYA McKINNEY. On September 25, 2009, ACL filed counterclaims against plaintiffs for the damage to the vessels.

Plaintiffs filed a motion for partial summary judgment arguing that there is no genuine issue of material fact that the fully found charter agreements involving the M/V JAMES E. PHILPOTT, M/V CHERYL DOBARD, and M/V EDDIE TOUCHETTE were improperly terminated.[7] The court granted the motion, finding that ACL's termination letter did not comply with the requirements of the minimum performance standards clause because it stated that the termination was for failure to comply with operational laws and regulations, specifically the October 13, 2008, incident involving the M/V TANYA McKINNEY, not for failure to meet minimum performance standard regarding the other vessels. Also, the court found that by using the word "specifically," ACL indicated that the October 13, 2008, incident involving the M/V TANYA McKINNEY was the only reason for the termination.

After that ruling, ACL amended its answer to assert the affirmative defenses of equitable estoppel, tacit acceptance, and waiver. ACL argues that their termination of the charter agreements

---

[7] The motion did not apply to plaintiffs' claims regarding the termination of the fully found charter agreement involving the M/V TANYA McKINNEY.

with Fitch Marine and Mohawk Freedom were proper due to the violations of the minimum performance standards by those companies, and were deficient only in form. ACL argues that plaintiffs should be prevented from asserting a lost profits claim based on the deficient form because Larry Fitch indicated that he "agreed and accepted" the terms of the termination, returned the vessels, and waited nine months to inform ACL that there was an issue as to the form of the termination.

Plaintiffs contend that ACL did not terminate the charter agreements with Fitch Marine and Mohawk Freedom for failure to comply with the minimum performance standards. Plaintiffs also argue that equitable estoppel is inapplicable because ACL did not change its position in reliance on a statement or action by Larry Fitch, tacit acceptance is inapplicable because the termination letter is not a contract, and that Larry Fitch did not waive any rights by waiting nine months to complain about the form of the termination letter because the prescriptive period on a breach of contract claim is ten years.

Plaintiffs and ACL have both moved for summary judgment on the applicability of ACL's asserted affirmative defenses of equitable estoppel, tacit acceptance, and waiver.

## ANALYSIS

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the

existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

There are genuine issues of material fact regarding whether ACL's asserted affirmative defenses of equitable estoppel, tacit acceptance, and waiver apply that preclude summary judgment. The understanding of the parties at the time of the termination of the charter agreements, their actions thereafter, and the events leading up to the termination of the charter agreements, are relevant factual inquiries for which a trial is required.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment as to Certain Affirmative Defenses (Doc. #76), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #77), is **DENIED.**

New Orleans, Louisiana, this  23rd  day of September, 2010.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**